IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SUSAN SPENCER,

        Plaintiff,           Case No.

v.

                              JURY DEMAND

WAL-MART STORES EAST, LP.

        Defendant.

_____/

# COMPLAINT

After working for Wal-Mart Stores for over fifteen years, Plaintiff, Susan Spencer ("Ms. Spencer"), was terminated from her career because of Wal-Mart's refusal to accommodate her disability and retaliation after taking medical leave related to her disability. Ms. Spencer took medical leave in March 2016. On June 1, 2016, Ms. Spencer returned to her regular night shift in the electronics department and worked within her restrictions without incident. The next day she was inexplicably moved to the day shift and made to stand/sit in the hot sun outside in the garden center for the entirety of her 8 hour shift. As a result, Ms. Spencer suffered from dehydration, heat exhaustion and her heart issues were exacerbated. Ms. Spencer complained about the assignment and the heat but was not allowed any other job assignment at that time. Ms. Spencer was forced to take time off of work in order to avoid the heat and the elements. Due to Wal-Mart's refusal to accommodate her disability, Ms. Spencer was forced to take further time off work. On September 17, 2016, Wal-Mart terminated this long-term, disabled employee because of her disability and in retaliation for filing an EEOC Charge and taking FMLA leave. Accordingly, Ms. Spencer files the instant Complaint for violations of the FMLA, TDA and ADA.

## PARTIES

1. Plaintiff is a citizen and resident of Henry County, Tennessee, and an employee of Defendant. Plaintiff worked for Defendant at its store located in Paris, TN.

2. Defendant Wal-Mart Stores East, LP. ("Wal-Mart") is a Delaware corporation licensed to transact business in Tennessee. Its registered agent for service of process is CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929-9710. At all material times, Defendant has been an employer as defined by the FMLA and under state law.

3. At all times material to this action, based on information and belief, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2015 and/or 2016 and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

4. At all times material to this action, Plaintiff was an "eligible employee" under the FMLA pursuant to 29 U.S.C. § 2611(2) and 29 C.F.R. § 825.110.

5. Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(g) and (h)(1).

6. At all material times Defendant has been an employer as defined by the ADA, 42 U.S.C. § 12111.

## JURISDICTION AND VENUE

7. This is an action for unlawful employment practices brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") (Count I); and the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Count II); and the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count III).

8. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

9. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue and this action was commenced within 90 days of receipt of the EEOC's Notice of Right to Sue.

## FACTS

10. Plaintiff, Susan Spencer, worked for Defendant, Wal-Mart for over fifteen years as a stocker and a sales associate at Defendant's store in Paris, TN.

11. Ms. Spencer's job assignment since 2010 was working the night shift, 10 p.m. until 7 a.m. as a stocker.

12. Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(h)(1).

13. Plaintiff was qualified for her job with Defendant and performed her job duties in a competent and satisfactory manner.

14. On May 5, 2009, Plaintiff injured her knee at the workplace and received benefits pursuant to the Workers' Compensation Act. When Ms. Spencer's workers' compensation case was closed one of the benefits she received was lifetime medical treatment on her left knee.

15. In or about February 2016, Ms. Spencer was suffering a flare up related to her original workers' compensation injury and sought medical treatment.

16. Prior to her leave in February 2016, Ms. Spencer was assigned to the electronics department where she primarily sat on a stool and waited on customers and answered the phones.

17. In February 2016, Ms. Spencer utilized a Wal-Mart scooter for about a week to make her way around the store. She was told that she could no longer use the scooter to get around.

18. On or about March 9, 2016, Ms. Spencer applied for medical leave, pursuant to FMLA and for short term disability (STD) benefits. She was out of work for twelve weeks. She utilized all of her accrued sick and vacation time during this leave.

19. The Certification her health care provider filled out and returned to Wal-Mart indicated that Ms. Spencer needed to be off work for flare ups of her condition, or that she might be able to work if allowed on a scooter.

20. During her medical leave, Ms. Spencer was schedule for a knee replacement, however, she required a cardiac evaluation due to cardio and pulmonary health conditions. Working through workers' compensation, the earliest cardiac evaluation was scheduled for July 6, 2016.

21. Wal-Mart did not engage in the interactive process with Ms. Spencer. Instead, Ms. Spencer was taken out of work by Wal-Mart.

22. Ms. Spencer reported back to work after her medical leave on June 1, 2016 and worked her regular job on the nightshift in the electronics department for eight (8) hours without incident.

23. The next day, on June 2, 2016, Ms. Spencer received a call from Christa, the Human Resources Manager at Wal-Mart, asking her to report to her office at 10 a.m. that day.

24. When Ms. Spencer reported to the human resources office she was presented with a "Temporary Alternative Duty Assignment" form which was already filled out stating that she was being transferred to people greeting in the garden center.

25. On information and belief, before Ms. Spencer was transferred to people greeting

outside the garden center there had not ever been a greeter stationed at that location.

26. Ms. Spencer stated that she was able to perform her duties in the electronics department, or as a stocker, and that she wanted to continue in that role due to her health conditions.

27. Ms. Spencer was told by Christa that she either signed the form and took the position outside in the garden center, or she would be terminated. Under duress, and wanting to keep her job, Ms. Spencer signed the form.

28. Ms. Spencer worked her new assignment for several long, horrible days during which she endured heat ranging from 82 degrees to 93 degrees, much higher with the heat index. Wal-Mart did not provide any chair or stool for Ms. Spencer to sit on, provided no shade, cover or any other protection from the elements, and required that Ms. Spencer work her entire shift outside but for her lunch and other breaks.

29. Ms. Spencer sat on her walker occasionally and fashioned an umbrella attached to her walker to shade her from the sun and heat. Despite her own attempts to minimize the overpowering heat, Ms. Spencer's existing cardiac health problems were exacerbated and she missed work several days in June, July and August.

30. Ms. Spencer complained to the HR department and to support manager Mark Webb that she could not work in the heat and that Wal-Mart was treating her unfairly and either trying to get her to quit or "trying to kill [her]." Ms. Spencer asked to do the indoor greeter position and was told that there were no open positions indoor. Wal-Mart did not change her assignment nor engage in an interactive process to determine a reasonable accommodation for her disability.

31. On June 27, 2016, Ms. Spencer filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging disability discrimination and retaliation.

32. On June 28, 2016, Ms. Spencer hand-delivered a copy of her Charge to the Wal-

Mart store.

33. On June 29, 2016, Ms. Spencer was again called into the HR office and again presented with a pre-filled "Temporary Alternative Duty Assignment Form" that transferred her to a position greeting people at the grocery front doors.

34. During this meeting, HR again failed to engage in the interactive process with Ms. Spencer to determine whether she could be accommodated in her position as stocker or in her position in the electronics department.

35. Despite being able to perform her job duties, Ms. Spencer was not allowed to return to work in her assigned department.

36. Wal-Mart allows employees to take extended medical leave and/or a leave of absence from their position. Ms. Spencer was not allowed to do so.

37. On information and belief, Wal-Mart has provided light duty indoor assignments, such as office helper or dressing room attendant, for other sales associates and stockers.

38. After taking FMLA leave, Plaintiff was designated "inactive" in Wal-mart's system and every day that she worked she had to override the system in order to clock in, and she was given no advance schedule like every other employee was given. This impacted her ability to do her job, schedule time off for medical appointments, and be properly credited for vacation and sick time earnings.

39. On September 17, 2016, Wal-Mart terminated Ms. Spencer for excessive absences.

**Count I**
**Violation of FMLA**

40. Plaintiff restates and incorporates herein the foregoing paragraphs.

41. At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

42. Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

43. Plaintiff was entitled to receive FMLA leave to care for her serious health conditions.

44. Defendant subjected Plaintiff to disparate terms and conditions of employment after she requested FMLA, including but not limited to, interfering with her rights to take FMLA on an intermittent basis; retaliating against her for exercising her rights under the FMLA; not returning her to her previous position after the expiration of her leave; and finally terminating her.

45. Plaintiff was entitled to receive FMLA on an intermittent basis.

46. Defendant's actions constitute both interference and/or retaliation violations of the FMLA.

47. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

48. Defendant's conduct harmed and caused damage to Plaintiff.

49. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### Count II
### Violation of TDA- Disability Discrimination/Retaliation

50. Plaintiff restates and incorporates herein the foregoing paragraphs.

51. Plaintiff was a qualified individual with a disability.

52. Plaintiff was discriminated against due to her disability.

53. Defendant subjected Plaintiff to a hostile work environment and discriminated and retaliated against Plaintiff on the basis of her disability in violation of the TDA.

54. Plaintiff could perform the essential functions of her job with reasonable accommodation.

55. Plaintiff was subjected to a hostile work environment and eventually terminated because of her disability and/or in retaliation for her requests for reasonable accommodation and complaints concerning the accommodation process.

56. Plaintiff could perform the essential functions of her job with reasonable accommodation. Plaintiff made requests for reasonable accommodation, including, but not limited to, being allowed to take intermittent leave, allowed to use the store scooter to assist her getting to her assigned department, given an indoor light-duty assignment, and being allowed to take a medical leave of absence and/or short-term disability leave.

57. Plaintiff was subjected to a hostile work environment and eventually terminated because of her disability and/or in retaliation for her requests for reasonable accommodation and complaints of disability discrimination and Wal-Mart's refusal to accommodate her.

58. Plaintiff was subjected to a continuing and on-going campaign of disability harassment in Defendant's workplace because of her disability.

59. Plaintiff reported and/or protested incidents of harassment by supervisors to Defendant's management, the reports were either ignored or rebuffed. Defendant failed to remedy and/or prevent disability harassment in the workplace.

60. Defendant is vicariously liable for the disability harassment perpetrated by its employees to Plaintiff, and is liable for failing to remedy disability harassment in the workplace.

61. Plaintiff's placement out of work without pay was motivated by her disability.

62. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

63. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count III
## Violation of ADA- Disability Discrimination/Retaliation

64. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

65. Plaintiff was a qualified individual with a disability.

66. Defendant discriminated and retaliated against Plaintiff on the basis of her disability in violation of the ADA that culminated in being terminated.

67. Plaintiff could perform the essential functions of her job with reasonable accommodation. Plaintiff made a request for reasonable accommodation, including, but not limited to, being able to take intermittent leave, allowed to use the store scooter to assist her getting to her assigned department, given an indoor light-duty assignment, and being allowed to take a medical leave of absence and/or short-term disability leave.

68. Defendant has continued to refuse to accommodate Plaintiff and retaliated against her by not allowing her to work in her regular position with or without a reasonable accommodation, transferring her to an 8-hour day shift in the aggravated heat, refusing to allow her a medical leave, and terminating her for protected absences.

69. Plaintiff was subjected to a hostile work environment and eventually terminated because of her disability and/or in retaliation for her requests for reasonable accommodation and complaints of disability discrimination.

70. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

71. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;
2. Judgment in favor of Plaintiff and against Defendant on all counts in this action;
3. Back pay and damages for lost benefits;
4. Reinstatement or front pay;
5. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;
6. Punitive damages;
7. Liquidated damages under the FMLA;
8. Attorneys' fees and expenses;
9. Prejudgment interest and, if applicable, post-judgment interest; and
10. Such other and further legal or equitable relief to which he may be entitled.

Respectfully submitted,

*/s Anne Hunter*

Anne Hunter BPR # 022407
Heather Moore Collins BPR # 026099
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com

*Attorneys for Plaintiff*